**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**DANA LIPFORD**                                                                                    **PLAINTIFF**

**V.**                                **CASE NO. 3:20-CV-00033-BD**

**ANDREW SAUL, Commissioner
Social Security Administration**                                                         **DEFENDANT**

## ORDER

### I.  Introduction:

On December 21, 2015, Dana Lipford applied for supplemental security income benefits, alleging disability beginning January 1, 2004.[1] (Tr. at 10) Her claims were denied both initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Lipford's application. (Tr. at 22) Ms. Lipford asked the Appeals Council to review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Lipford filed this case seeking judicial review of the decision denying his benefits.

### II.  The Commissioner's Decision:

The ALJ found that Ms. Lipford had not engaged in substantial gainful activity since the application date of December 21, 2015. (Tr. at 13) The ALJ determined that Ms. Lipford had the following severe impairments: diabetes, lumbar degenerative disc disease, asthma, status post total hysterectomy, bilateral salpingo-oophorectomy and lysis

---

[1] Ms. Lipford amended her alleged onset date to December 21, 2015. (Tr. at 38)

of adhesions, major depressive disorder, bipolar disorder, post-traumatic stress disorder (PTSD), and generalized anxiety disorder. *Id*.

After finding that Ms. Lipford's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Ms. Lipford had the residual functional capacity (RFC) to perform work at the medium exertional level, with limitations. (Tr. at 17) She should avoid concentrated exposure to pulmonary irritants. *Id*. She could perform simple, routine, and repetitive tasks as well as make simple work-related decisions requiring little judgment. *Id.* She could concentrate, persist, and maintain pace with normal breaks, but not at a production rate pace. *Id*. She would be limited to incidental interpersonal contact with simple, direct, and concrete supervision. *Id*.

The ALJ found that Ms. Lipford had no past relevant work. (Tr. at 22) Relying upon the testimony of a Vocational Expert (VE), the ALJ found, based on Ms. Lipford's age, education, work experience and RFC, that jobs existed in significant numbers in the national economy that she could perform, including work as cleaner II and dining room attendant. (Tr. at 23) Thus, the ALJ determined that Ms. Lipford was not disabled. *Id*.

### III.   Discussion:

   A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence

that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B.  Ms. Lipford's Arguments on Appeal

Ms. Lipford maintains that there is less than substantial evidence to support the ALJ's decision to deny benefits. She argues that the ALJ failed to properly and fully evaluate multiple medical-provider opinions, and also, that the RFC assigned by the ALJ did not fully incorporate all of her limitations. The Court finds merit in the first argument.

Ms. Lipford's medical providers opined in no fewer than eight times that she could not work due to mental limitations. She was treated for bipolar disorder, anxiety, and PTSD throughout the relevant time period and took medication with minimal effect. (Tr. at 527-546, 736-737, 1492-1504, 1586-1595) Her providers noted that, on occasion, she had difficulty understanding instructions, was combative and irritable, demonstrated paranoid behavior, and "terrorized medical staff." (Tr. at 536-538, 734-737)

In December of 2016, Ms. Lipford displayed rapid speech and flight of ideas. (Tr. at 1505-1508) In January of 2017, she told her social worker that she had low self-esteem, felt tired all the time, and could not concentrate. (Tr. at 1586-1595) In January of 2018, she displayed fixated thinking patterns, constantly repeated herself, and became overwhelmed by too much information or too many questions. (Tr. at 2556-2557) At

times, Ms. Lipford showed improvement, but her record of mental health struggles is documented by multiple provider opinions, discussed below.

On June 8, 2015, APRN Teresa Gonzalez, Ms. Lipford's treating provider, filled out disability paperwork for the U.S. Department of Housing and Urban Development. (Tr. at 671-673) In those papers, she stated that Ms. Lipford was operating under a disability and that her impairment was of long duration and would substantially impede her ability to live independently. *Id*. On May 2, 2016, Ms. Gonzalez wrote a letter stating Ms. Lipford was incapable of maintaining gainful employment due to her mental state. (Tr. at 354)

In an August 23, 2016 letter, APRN Lauren Willmer reiterated Ms. Gonzalez's opinion. (Tr. at 663) She stated that Ms. Lipford had been under care at the clinic since April of 2015. *Id*.

On November 28, 2016, Dr. Richard Hester, M.D., wrote in his clinic notes that Ms. Lipford was "disabled and unable to work." (Tr. at 1474) In February of 2017, Dr. Hester wrote two letters stating that Ms. Lipford was unable to work due to her mental conditions. (Tr. at 1605-1606) He opined that the conditions were permanent. *Id*.

On March 28, 2017, LPC Alex Sprouse, a counselor at Ms. Lipford's mental health clinic, wrote a letter stating that she was unable to work for the foreseeable future. (Tr. at 1698)

On November 1, 2018, psychologist Ashlie Williams filled out a medical source statement stating that Ms. Lipford would have moderate-to-extreme impairments in most mental functioning areas. (Tr. at 2398-2399) Her diagnoses were Major Depressive Disorder, Generalized Anxiety Disorder, Intellectual Disability, and Personality Disorder. *Id*. Ms. Williams wrote that Ms. Lipford's severe mood swings and aggressive and impulsive behaviors would make maintaining employment very difficult. *Id*.

Ms. Lipford argues that the ALJ did not give good reasons for discounting these provider statements, which spanned the entire relevant time period. It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). ALJ must give reasons for rejecting a treating provider's opinion. *Ingram v. Chater*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990).

In her opinion, the ALJ did not mention any of the providers by name; she merely afforded all of the opinions little weight, in one fell swoop, as inconsistent with the medical evidence. (Tr. at 21) The ALJ gave no specific reasons for discounting the opinions; instead, she merely stated in conclusory fashion that they were inconsistent. Therefore, reversal is required. *See Baars v Astrue*, 2012 U.S. Dist. LEXIS 87320 *12 (W.D. Ark. June 25, 2012)(ALJ improperly discounted multiple medical source statements and did not give good reasons for doing so).

## IV.  Conclusion:

The ALJ's decision is not supported by substantial evidence in the record as a whole. The ALJ did not properly evaluate or discuss multiple medical opinions. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED, this 13th day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE